(152 App. Div. 280.)

### COSTELLO v. COSTELLO et al.

(Supreme Court, Appellate Division, Fourth Department.   July 9, 1912.)

TRUSTS (§ 331\*)—ACCOUNTING—CONCLUSIVENESS OF SURROGATE'S DECREE.

Testator bequeathed one-half of the residue of his estate to trustees, to pay the income to his son J., for life, and at his death to divide the corpus among J.'s children.   Nearly all testator's property consisted of his interest in various tanneries.   In 1891 a petition was filed for an accounting, J.'s children being represented by a guardian, in which a decree was made settling the account and fixing the amount of the residuary estate.   The next year a combination. of all the tanning interests was projected, to avoid competing with a powerful trust, and the trustees, being unable to accept payment in the stock of the consolidated corporation, sold the trust interest to J. for an amount which was very nearly the value of the trust estate as fixed by the surrogate's decree. J. transferred such interest to the consolidation, receiving preferred stock for the value thereof, and an equal amount of common stock representing good will.   Four years after the sale an accounting was had before the surrogate, and a decree entered settling the accounts, and the trustees turned over the balance found due to a substituted trustee and were discharged.   *Held* that, in the absence of proof of fraud, the surrogate's decree constituted a bar to a subsequent suit to compel a further accounting by such trustees on proof that the stock received by J. subsequently became far more valuable than the value of the trust estate as fixed by the surrogate.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 494; Dec. Dig. § 331.\*]

Spring, J., dissenting.

Appeal from Equity Term, Erie County.

Action by Clarence E. Costello against Alfred Costello and others. Judgment of dismissal, from which plaintiff and certain defendants appeal.   Affirmed on the opinion of Clinton, Referee, which is as follows:

Patrick H. Costello died December 17, 1890, leaving a last will and testament in and by which, among other things, he gave one-half of his residuary estate to Alfred Costello and Patrick C. Costello, in trust to pay the rents and profits to his son John H. Costello during his life, and at his death to divide the funds amongst such children of John H. Costello who might survive him.   He appointed Alfred Costello, Patrick C. Costello, and John H. Costello executors.   Almost the entire property of the testator consisted of his interest in various partnerships in which he and the persons named as executors were interested.   One of the partnerships, Alfred Costello & Co., was engaged in tanning hides, which were bought and when tanned sold by the principal one of the other partnerships, P. C. Costello & Co.   By the terms of the will the executors were permitted, without liability on their part, to allow the testator's interest to remain in the partnerships, and this they did.   The will was admitted to probate in Oneida county, and Alfred Costello and Patrick C. Costello qualified and entered upon the discharge of their duties as executors.   In September, 1891, on the petition of the last-named executors, an accounting was had before the surrogate of that county; the proceedings being in all respects regular and all parties being duly cited, the infants, children of John H. Costello, being represented by a guardian who made certain objections to the account as filed by the executors.   Full proofs were given before the surrogate, and in July, 1892, a decree was made by him settling the account and fixing the amount of the residuary estate.

In 1893 a combination of all the tanning interests within a very large dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trict of the United States, including that in which the tanning plant and timber lands of Alfred Costello & Co. were situated, was projected. At this time the leather business was not in a prosperous condition, and, had the combination been formed without the surviving partners in said firms becoming a party thereto, their business would have stood practically alone, and would have had to compete at a great disadvantage with a powerful trust. They therefore, in good faith and with a view to the interests of all concerned, concluded that the safety of the business required them to join said combination and to sell the property of the firms to it, the combination to be represented by a corporation. The trustees under the will contended by counsel that they could not properly sell the trust interest, because, in substance, to do so would be to make an investment in the stock of the corporation, and such investment was not warranted in law. Accordingly they sold the trust interest (which still consisted of interests in the said partnerships) conditionally to John H. Costello; the condition being that the transfers should take effect only in case the corporation were formed and the partnerships' assets sold to it. The amount for which the property was sold to John H. Costello was $174,708.26, being very nearly the value of the trust estate as fixed by the decree of the surrogate. The trustees took John H. Costello's note for this amount, payable on demand, retaining as security all the stock of the proposed corporation, the United States Leather Company. It is not seriously contended that this sale was fraudulent, nor that it was not made in good faith. Under the arrangements with the United States Leather Company the assets of the partnerships were valued at certain fixed rates, for which preferred stock was to be issued, and it was agreed that an amount of common stock equal to the preferred stock that might be issued should be paid for the good will of the partnerships. It is quite apparent upon the evidence that the rates of the valuation of the property conveyed were arbitrary, and that there was little or no consideration for the issuing of the common stock. There is evidence in the case that the preferred and common stock at various times during the year succeeding the sale were upon the market and had fluctuating market values, which for preferred stock in that year reached par. The sale to the United States Leather Company was completed in the spring of 1893.

In September, 1897, an accounting of the executors and trustees was had before the surrogate of Oneida county; the proceedings being in all respects regular and all parties interested being represented, the infants appearing by their special guardian. The result of this accounting was a decree settling accounts and fixing the amount of the trust estate at $173,980.97; the decree ordering (as requested by the trustees) that upon the trustees paying over that amount, and delivering all books, papers, and other property of the trust into the hands of Charles S. Symonds, who was appointed as their successor, their resignations be accepted, and they be discharged from all liability. It appears that upon this accounting evidence was given respecting the sale to the United States Leather Company and the transfer of the trust interest to John H. Costello, and that the surrogate found the facts in relation thereto, finding, among other things, that the assets and property of the three firms had been put herein at their full value, and the testator's interest appraised at its full value, and, further, that the amount for which the trust interest was sold to John H. Costello, $174,708,266, was the full value thereof.

Upon both of the accountings mentioned the value of the entire estate, including that of the trust estate, was ascertained from the accounts and the books of the partnerships, which accounts have been kept in all respects upon the system and in the manner assented to by the testator during his life—that is, in the manner in which they were accustomed to be kept before the testator's death; and there was evidence before the surrogate that such valuations represented the fair value of the entire and of the trust estate, and there is evidence in the case before me that this method of ascertaining such values gave the fair value of the testator's interest in said partnerships.

In 1893, after the sale to John H. Costello, the surviving partners sold certain personal property, which was not included in the sale to the United

States Leather Company, for $12,000, and in 1897 they sold mineral rights in the lands of Alfred Costello & Co. for $17.594.70. The interest which the trust estate would have had in these sums, but for the sale to John H. Costello, was not included in the inventory of the executors, nor in any of the accountings specifically; but in the accounting of 1891 all the personal property was included at fair values, and the lands of Alfred Costello & Co. were included at a value of about $7 per acre greater than their actual value, so that the failure to include the interest which the trust estate would have had in these sums in the accountings did not in fact affect the true value of the trust estate as accounted for and determined by the surrogate, nor the true value thereof, as fixed for the purpose of sale to John H. Costello.

No appeal was ever taken from either of said decrees, and the time to appeal expired before the commencement of this action. The trustees paid the $173,980.97 to the said substituted trustee, Charles S. Symonds, partly in money and partly by assignment and deliveries of securities belonging to the trust, and in all respects complied with the last-mentioned decree of the surrogate. After such payment, and on proof thereof, the said trustees were finally discharged by the surrogate. The total amount of stock of the Leather Company turned over to the surviving partners in payment for the property of the partnerships was $3,150,400, at par, of preferred stock, and a like amount of common stock ostensibly for the good will; and of this stock at par, or the proceeds thereof, an amount largely in excess of $174,708.26 would have become a part of the corpus of the trust fund, if the trust interest had been sold to John H. Costello. It is claimed by the plaintiff and by the other beneficiaries, sons of John H. Costello, that a very much larger amount would have thus been realized for the trust estate, and that therefore, equitably, the former executors and trustees should be held to account for the difference between what the substituted trustee has received and that amount. It cannot be ascertained from the proofs what the amount that would have been realized for the trust by sale of the stock of the Leather Company would have amounted to. The gist of the claim of the plaintiff and of said defendants is that the sale to John H. Costello, neither in law nor in equity, could relieve them from liability to account for a loss thus incurred; and while not claiming intentional fraud on the part of the executors and trustees, it is argued that the same was constructively fraudulent. On the part of the defendant trustees and executors and John H. Costello it is claimed that the decrees of the surrogate are final, and that they cannot be disturbed through this action in equity, and, further, that there is still a remedy in the Surrogate's Court of Oneida county by petition to open the accounts and the decrees of the surrogate, and that, therefore, equity will not assume jurisdiction, also that the statute of limitations is a bar.

Assuming that the plaintiff had made up a cause of action entitling him to relief on the ground of constructive fraud, I am of the opinion that the statute of limitations is no bar to the maintenance of this action by the plaintiff, and no bar to the granting of relief to the defendant Thomas Costello. The plaintiff and that defendant were minors when this action was commenced, and under section 396 of the Code the statutory limitation of the time for commencing the action would be extended for a period not exceeding one year after they arrived at majority. But it is different in the case of John H. Costello, Jr., who was more than 22 years of age at the time of the commencement of the action, and more than 10 years had elapsed before that time, from the performance of the acts upon which the cause of action could be predicated; those acts having been performed in 1893 and prior thereto, the action having been begun in 1909.

It is quite clear that the decrees of the surrogate are a bar to this action. In the accounting of 1901, the surrogate of Oneida county necessarily determined the actual value of the trust estate at that time, subject to modifications which might change the amount as the business of the partnerships proceeded; and upon the accounting in 1897 the surrogate again necessarily determined, not only the value of the trust estate, but the propriety and validity of the sale to John H. Costello. Upon both these accountings the plaintiff, John H. Costello, Jr., and Thomas Costello were duly represented by

guardians ad litem, and it is quite clear that they are bound by the decrees as fully as though they had been of full age and had appeared upon the accountings. In the absence of any evidence clearly showing that some fraud upon the court was committed upon the accountings, or one of them, which would have changed the decision of the surrogate in 1897, a court of equity will not disturb the decrees. There is an entire absence of such evidence.

The main facts were before the surrogate, and the account, proceedings, and decree of 1897 do not show a concealment of any material facts disclosed on the trial of this action that can be said to be of such a nature as to amount to a fraud upon the court, or as to have induced the surrogate to hold that the sale to John H. Costello was either fraudulent in fact or that it resulted in the creation of a trust by construction. The surrogate had before him the fact that the property of the partnerships had been sold for stock of the United States Leather Company, and that to carry out that sale the trust interest had been sold to John H. Costello for the reason that the trustees could not lawfully take the stock. The general nature of the transaction, both as to the sale to John and the sale to the Leather Company, was presented, and the same arguments as to the propriety of the sale to John which are made to-day naturally would arise upon the evidence before him, except the subsequent acquiring of a fixed value of the stock of the Leather Company, something that then lay in the future, and something that was, at that time, wholly uncertain. It cannot be said that, had the surrogate been informed of the amount of stock taken which would represent the trust interest, he either would or should have come to a conclusion different from that set forth in the decree. A court of equity will not interfere with the decree of a competent court, upon the ground of fraud, unless the evidence is very clear that by fraudulent devices the court rendering the judgment was misled and brought to a conclusion that it otherwise would not have arrived at. The facts proven before me do not show any such state of affairs.

But there is another objection to a recovery in this action that seems to me to be insuperable. It is well-settled law that the intervention of a court of equity to enforce equitable rights in contravention of a legal determination of the rights of the parties by a court of competent jurisdiction cannot be had, where the court that has given the judgment has full power to open its judgment and properly adjust the rights of the parties. This power the Surrogate's Court of Oneida county undoubtedly has. Subdivision 6 of section 2481, Code of Civil Procedure, gives the surrogate the power "to open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court, or to grant a new trial or a new hearing for fraud, * * * or other sufficient cause." The decisions in this state are to the effect that this power is as full and ample as that of the Supreme Court, and that it is not subject to any limitation such as that placed upon the exercise of similar powers by the court last named, or by the statute of limitations. If the application were made to the surrogate, he would have full power to take the same evidence that has been given in this case, and to decide thereon whether proper cause for vacating the decree of 1897 had been made out. It is quite plain, under all the authorities, that a court of equity will not exercise its extraordinary powers in such a case.

I am also of the opinion that a case of constructive fraud has not been made out. The contention of the plaintiff presents two aspects: In one, the taking of the title by John H. Costello is claimed to be constructively fraudulent, and in the other aspect the act of the trustees in selling to John is claimed to be a constructive fraud. The sale to John was made in 1893 under circumstances which, in my opinion, fully justify it, because any prudent man would then have said that a sale to the United States Leather Company was, under all the circumstances, wise, and that, further, he would have said that such legal proceedings as might be necessary to consummate such a sale were wise; provided the facts then known to all the parties did not indicate that a wrong would be committed to any one interested in the property. This was exactly the state of affairs when the transfer to John was made. The leather business was in bad condition generally. The valuable property

of Alfred Costello & Co. in a few years would cease to be worth much of anything by reason of the using up of the bark necessary for tanning. The competition of the trust, which was to acquire the property of pretty nearly all the tanneries in the district in which the Alfred Costello plant was situated, would leave Alfred Costello & Co. and P. C. Costello & Co. to fight, almost single-handed, an immense aggregation of capital. Everything tended to show that a sale upon proper terms was imperative. The price offered for the property was to be paid in stock, and the future value of this stock was an unknown quantity; but the prices were put so high that it was justifiable to presume that the actual value of the property would eventually be obtained. It was necessary to give good title to all the property, and the executors and the trustees could not legally take the trust stock. Indeed, it was entirely uncertain whether the stock would in law be paid up, and whether, if taken by the executors or trustees, they would not be assuming a liability for debts of the corporation to the extent of the amount of stock taken.

These facts would naturally have led a fair-minded man to consummate the sale to the Leather Company, and, for that purpose, to ascertain the fair value of the trust interest, and dispose of it for that value to some person who could convey to the Leather Company and assume all the risks and liability of taking stock therein. This was done, unless it can be said that the executors and trustees were chargeable with knowledge that in the near future the amount of stock which would represent the value of the trust interest (according to the valuations made on the sale to the Leather Company) would be in cash, much greater than the actual value of that interest, and this the evidence does not show. John H. Costello bought taking the risk of the purchase and binding himself to pay the full amount of $174,-708.26, and his purchase made him, as matter of law, the owner of that interest, personally he was under no equitable or legal obligation to the remaindermen, he was not a life tenant nor a trustee, and in the absence of actual fraud on his part he could not be made constructively a trustee. I may add that the evidence does not show that by the purchase he realized any considerable amount from the stock of the Leather Company over and above the amount the trust estate would have received from that stock, if he had taken it in trust for himself and the remaindermen.

As to the executors and trustees there is no serious claim of actual fraudulent intent, and therefore no ground for charging them as trustees constructively. They have not been guilty of actual fraud. They were not the recipients of any benefit from the sale to John H. Costello, and they have submitted the entire transaction to the Surrogate Court to an extent which, if they did not go into all the details, certainly called the attention of the court and the guardian of the infants to the main facts, and enable them to acquire full knowledge of all details that might have a bearing upon the propriety of the sale to John and to the Leather Company.

I conclude, therefore, that a cause of action has not been made out upon the merits, and, further, that, had the proofs before the surrogate covered all the details of the transaction with the Leather Company as they existed in 1897, he would have been fully justified in disposing of the matter upon the accounting before him as he did.

My final conclusion, therefore, is that the action should be dismissed.

Edward C. Randall, for appellant Clarence E. Costello.

Arthur C. Wade, for appellant John H. Costello, Jr.

Charles B. Sears, for appellant Thomas C. Costello.

Stewart & Shearer (John D. Kernan and William B. Quinn, of counsel), for respondents Alfred Costello and United States Trust Co., as executor of Patrick C. Costello, deceased.

Maulsby Kimball, for respondent John H. Costello.

PER CURIAM. Judgment affirmed, with costs.

McLENNAN, P. J., and FOOTE, J., concur, upon the opinion of Clinton, Referee. KRUSE, J., concurs, upon the ground that the decree of the Surrogate's Court is a bar to the maintenance of action. ROBSON, J., concurs in result.

SPRING, J. (dissenting). Patrick H. Costello, a resident of Camden, in the county of Oneida, died December 18, 1890, leaving him surviving his widow, a daughter, and two sons, Alfred and John H., the latter of whom had three sons, the eldest, the plaintiff in this action, then about eight years of age. The decedent left a last will and testament in which he provided for his widow and daughter, and also for other relatives by general bequests, and disposed of one-half of his residuary estate to Alfred Costello by the tenth provision and the other half by the eleventh item, which reads as follows:

"I give, devise and bequeath the other one-half of the rest, residue and remainder of all my property, both real and personal, to my said son Alfred Costello and to Patrick C. Costello, of New York City, to be held in trust by them and to pay over all the rents, issues and profits thereof to my son John H. Costello during his natural life and at his death, I give, devise and bequeath the said one-half of my estate to his children him surviving, share and share alike; and until such children respectively arrive at the age of 21 years, I order and direct that the share of each of the said children be held in trust by the said Alfred Costello and Patrick C. Costello, and the income thereof used for his or her education, maintenance and support. But, I order and direct that such part of the portion of my estate hereby left in trust for John H. Costello, and in case of his death, in trust for his children, until they reach the age of 21 years, as shall be in the business of P. C. Costello & Co. or in the business of Alfred Costello & Co. at the time of my death shall be allowed to so remain by the trustees hereby appointed, so long as the said trustees think fit; and in case such portion be lost or diminished through losses sustained by either said firm of P. C. Costello & Co. or Alfred Costello & Co., I hereby relieve the said trustees from all liability therefor."

The will was admitted to probate in the Surrogate's Court of Oneida county December 29, 1890, and letters testamentary issued to the executors named in the will. The testator had long been engaged in the business of tanning hides and dealing in leather, and his property consisted chiefly in three copartnerships owning tracts of hemlock timber and other property devoted to the business of tanning leather. In the firm of P. & P. Costello, whose only assets were obligations of the other companies, he owned a one-half interest, in P. C. Costello & Co., 18¾ per cent. interest, and in Alfred Costello & Co. one-fourth interest. The other members of these firms were Patrick C. Costello, who had been associated in the tanning business with the testator continuously since 1848 (and who died after the trial of this action), and the two sons of the testator.

An inventory was made as of January 31, 1891, by Patrick C. and Alfred Costello, and filed in the office of the surrogate, which showed total assets of the testator amounting to $433,014.30, and which was arrived at by taking the estimates appearing on the books of the firms mentioned. After the payment of the legacies and the transfer of one-half of the residuary estate to Alfred Costello, the remaining one-half, comprising the trust estate, was kept in the two firms of P. C. Costello & Co. and Alfred Costello & Co. in compliance with the direc-

tions of the testator; the other firm having gone out of business or been absorbed by these two interests. John H. Costello, the life beneficiary, was apparently permitted to withdraw money from the firm from time to time as he desired, and in excess of the income derived from the trust fund or from his own share.

In March, 1892, Patrick C. and Alfred Costello filed in the Surrogate's Court an account as executors. They had withdrawn funds from the firms to pay debts, expenses, and legacies; otherwise the interests remained intact in the copartnerships. A decree was entered on this accounting, determining the balance of the assets of the testator at the sum of $399,970.18, subject to deductions for commissions, expenses, etc. This property, consisting, not of money or securities of a precise determinate value, was fluctuating in its value, and the surrogate in the Thirty-Second finding stated the amount—

"will vary from the value of such interests stated in the thirty-first finding according as the sums realized from the different items of the assets of such firms, stated in the inventory herein, differ from the valuations thereof contained in such inventory."

And the surrogate in his decree permitted the trustees to keep the trust property in the copartnership business, as authorized by the will, and directed the executors to transfer the trust estate to the trustees, which was done. This transfer involved no change in the character of the assets. They still constituted an aliquot part of the firms' assets, subject to increase or decrease in value as the general firm property fluctuated in value. In fact, the legal title was held by the surviving partners, and it was to some extent a fiction in transferring the trust estate formally to the trustees; for after the payment of the debts and legacies title passed to them ipso facto, only subject to the control of the surviving partners for the purpose of closing out the business. The executors were copartners, so that they continued the booking along without change, recognizing in the withdrawal of assets or income that the interests of the testator now belonged one half to Alfred Costello and the other half to the trustees who were expected to pay the income to John H. Costello during his life.

In 1892 and 1893 there was much industrial expansion and the centralizing of companies into trusts or combinations. In the early part of 1893 an agreement was entered into by many constituent leather companies with a view to organizing into a trust, which soon culminated into a syndicate comprising more than 75 per cent. of the sole leather tanneries in the United States, and known as the United States Leather Company. The two Costello firms executed this agreement January 25, 1893, and they were among the early projectors of the enterprise. Patrick C. Costello, a veteran in the leather business, investigated carefully the plan devised, and believed in its efficiency, and John H. Costello, after investigation, was satisfied of the propriety of entering into this combination. Within three months the organization was completed, and Patrick C. Costello was on the directorate and a member of the executive committee, the real managing board of the corporation. He, therefore, was familiar with its affairs, had an insight into its business, and believed in its financial standing.

By the agreement·of January 25th two Costello firms agreed to assign to the corporation, when formed, all the property and estate, including the good will of the firms, excepting the mineral rights of Alfred Costello & Co. and the merchandise in stock in the store. In this agreement no distinction was recognized between the trust estate and that held by the other copartners. The entire interest was expected to pass to the syndicate, if formed. It is clear the trustees at that time had no expectation of selling the property to John H. Costello, or of treating it any differently than the other property held by the copartners. The required signatures to the agreement of consolidation were obtained February 25, 1893, and the corporation created out of these component companies, managed by sagacious men of business, in May elected its directors. The United States Leather Company was a New Jersey corporation, and a statute in the state of Pennsylvania prohibited a foreign corporation owing real property in that state in excess of $10,000,000, which was less than the value of that expected to be owned by it. The Penn Tanning Company was organized to take the title, a mere subsidiary holding company, and stock was issued by it in an amount equal to that issued by the real organization, and each holder of the Penn Company stock exchanged it, dollar for dollar, face value, for the stock of the Leather Company. Some point seems to be made that the agreement of January 25, 1893, was not carried out, because of this intermediary body, created to meet an emergency—not to prevent performance of the original agreement, but to facilitate the execution to the letter of the plan devised by the founders of the enterprise.

On April 25th the three Costellos, designating themselves as copartners in the two companies, entered into an agreement with the Penn Tanning Company, in order that the combination scheme might be carried into operation. A definite plan had been adopted to ascertain the value of the property of each of the companies forming the trust. For instance, tanneries were to be rated at their vat or tanning capacity, and bark lands by the cord. Preferred stock at 8 per cent. was to be issued for two-thirds of the ascertained value of the property when made over to the corporation, and a like amount of common stock for the good will of the company making the transfer. The value of the property of the Alfred Costello firm was appraised at $2,795,252.75, and by subsequent correction it was ascertained to be $2,476,600, and of the firm of Patrick C. Costello & Co. $673,800; and upon the transfers being made 24,766 shares of preferred stock of the corporation were issued and delivered, representing the first company, and 6,378 shares of like stock, all of the par value of $100 a share, for the second company, and the same number of shares of common stock were issued.

Instead of carrying out the agreement of January 25th, as was intended, and permitting the trust estate to be the recipient of its allotment of these shares, a sale was made of all the interest of the trustees in the firm properties to John H. Costello for its value as found subsequently in the decree of the Surrogate's Court in 1897, to wit, $174,-708.26, and which was approximately the value according to the de-

cree of 1892. His promissory note was taken for that sum, secured by the shares of stock of the United States Leather Company representing his own interest and that for the trust stock as they were issued from time to time. The reason for this shift is that the attorneys for the Costellos, and they were acting in like capacity for the trustees as well, advised the adoption of this plan. The investment of trust funds in shares of stock of a new corporation like the United States Leather Company is not to be advised or commended, and yet the real motive for the advice given seems to be that the trustees would be—

"personally liable to John's children for the value of the trust interest sold, for all profits realized from these stocks, and for all losses which result from them."

Let us see if the course pursued avoided the objections to the investment directly in the United States Leather Company stock. The property of John H. Costello was invested in the two Costello companies, and he was a debtor to them by reason of excessive withdrawal of assets. The value of his promissory notes, therefore, depended upon the value of the stock of the United States Leather Company. If that organization proved to be a success, the note would be paid; otherwise, not. In other words, if a profitable venture, John H. reaped the benefit; if a failure, his children might suffer the loss. The sale of this large trust estate to John H. Costello, one of the copartners, secured by these shares of stock, was no more to be justified than the sale of the property to the United States Leather Company. If the note was not paid, the trustees would still be personally responsible to the ultimate owners of the trust estate.

It is obvious that the Costellos had the utmost faith in the new enterprise, and their judgment was fully justified. At the time of the judicial settlement in 1897 John H. had paid on the note $125,675. The record does not disclose what the copartners or John H. received for the stock which they sold. The court found:

"I find that at no time during any of the proceedings before the surrogate was any evidence produced informing him of the amount for which the property of the various firms was inventoried and sold to the United States Leather Company, nor informing him as to the amount of stock of said company which the various partners received, nor of sales of said stock made by the partners, nor of the actual proceeds received."

There is a schedule of sales in evidence (Exhibit Book, page 219 et seq.) of both the preferred and common stock from June, 1894, to 1908. The preferred was sold on the first date at $64.50 a share, and the common at $9. The sales of the former tended upward generally, until in 1908 they reached $120 per share. There was more or less fluctuation in price, and during a brief depression in business they sold at $41.50 a share, but only for a short time. The common stock varied from $6 to $20 a share. It is clear that John H. Costello received for the trust property, which was sold to him, far in excess of the amount he paid for the same.

There is no controversy over the material facts in this action, and we may assume to be true every important fact which the respondents

urge to uphold the judgment. It is claimed that the value of the property, as stated in the inventory and in the decree of 1892, was correctly given. We will so assume. Assets not in money are always liable to change in actual value. The trustees are not held liable for any diminution in value which may ensue and not attributable to their remissness. On the other hand, whatever they receive from the property intrusted to them must be accounted for. This property was interlinked with that owned by the copartners. It was very important for them to sell their interests. Patrick C. testified that the leather business was depressed, and that he appreciated the wisdom of the combination which was made. They could not become members of the new organization unless all the property of the two firms was transferred to it. They agreed to do that at the outset. In order, as they apprehended, to relieve themselves from personal responsibility to the children of John and still accomplish the plan so important to them, the makeshift was advised. Trustees cannot juggle with trust property in that way. Their own personal interests and those in the fiduciary relation may have come in collision. The latter could not be put aside merely because in dollars and cents they were of less value. The fairness of the inventory is not impeached. The vice in the conduct was not in making the inventory or fixing the value on paper in their first account filed. The misconduct is found in their manipulation and exchange of the trust property, so that they were the gainers in effectuating their scheme of organization and enabling John, the other executor and copartner, to reap large financial returns, and all at the expense of the minor children, whose interests they were bound to safeguard.

The respondents lose sight of the controlling fact that, whatever was the value of these tangible assets at the time of the inventory and when transferred to John, they belonged eventually to these three children. An unexpected situation arose, which imparted added worth to all this Costello property. These copartners immediately became active. The enterprise may have been speculative. It is of no importance, for the trust property was sold to the company in fulfillment of the plan for which the trustees were sponsors, and they ought to account for exactly what was realized from the sales of the shares of stock representing the trust estate.

I do not deem it important to consider the question of book values or of the swollen estimates of the property to be taken over by the United States Leather Company. However, on the latter subject, in 1895 Patrick C. Costello, as a member of the executive committee of the new organization, and after he had ample opportunity to investigate its business condition, joined with the other members of the committee in a circular to the stockholders which contained this statement:

"The company paid one dollar of its preferred stock at par for each one dollar in value acquired of real and personal property connected with the tanneries and at a valuation mutually agreed upon as fairly representing its cash worth. The basis upon which the various kinds of property were acquired, to wit, leather, hides, raw and in process, bark, bark lands, tanneries, sawmills, railroads, etc., is on record at the New York Stock Exchange, and was furnished at the time of listing the company's bonds."

It is also to be noted that, simultaneously with the accomplishment of the syndicate plan, the agreement to sell the trust estate to John was entered into. The highest good faith is required of persons acting as trustees. Certain management of an estate committed to them in one instance may clearly denote integrity of purpose, and in another may not measure up to that standard. If the estate has been managed to aid the trustees in an undertaking in which they are personally interested, their conduct will be subjected to rigid scrutiny. In this case I think the facts show that these trustees, in their anxiety to accomplish the sale of all the Costello properties, overlooked their obligation to these infants.

In 1897 the trustees had a judicial settlement of their account in the Surrogate's Court of Oneida county, and a decree was entered adjusting their account and confirming the sale of the property to John and determining the amount of the trust estate at the selling price to him. It is claimed: (1) That this decree is a bar to the maintenance of this action; and (2) that the only remedy available to these beneficiaries, who are now of age, is to open that decree.

At the time the account was rendered the trustees knew the effect of the consolidation of the constituent companies in the United States Leather Company. It had proved to be a success, and its stock was appreciating in value. Patrick C. and Alfred Costello were sworn on the hearing, and in substance testified that the trust estate was inventoried at its fair value, and that the sum of "$174,700.22 was a full and fair value, under all the circumstances, for the trust property which was transferred." On the basis of the inventory and former accounting, the trustees had converted the assets into cash for all they were worth. These two trustees carefully abstained from giving the details of the transaction which terminated in the organization of the United States Leather Company and the Penn Tanning Company, and the facts connected with the transfer of all the Costello property, and there was no disclosure of the amount John H. Costello received for the shares of stock delivered to him. Had these facts been presented, the special guardian would, unless recreant to his duty, have investigated and ascertained the real purpose of the sale to John H., and the surrogate would not have approved of the action of these trustees. Objections were filed to the account as to three small items, aggregating $198.88, and "generally to all items diminishing the trust estate, but raised no issue as to the right of the trustees to limit the credit to the trust estate to $174,708.26." (See finding VI). The special guardian made no examination of the witnesses produced, and filed a written report containing this statement:

"As evidence was produced before the court concerning the amount and condition of the trust funds in which said infants are interested, also evidence as to the reasons why the executors and trustees should resign their trusts, I do not deem it my duty to report thereon."

The care and extraordinary caution to a finical degree, which have hedged about the transactions connected with the management, apparently affected the special guardian. The decree was entered ratify-

ing the sale and permitting the trustees to resign, which they did; and the defendant Symonds was appointed substituted trustee of this fund.

It is well settled, as a general proposition, that the decree of the Surrogate's Court is conclusive on all the parties to the proceeding. Matter of Denton v. Sanford, 103 N. Y. 607, 9 N. E. 490; Weintraub v. Siegel, 133 App. Div. 677, 680, 118 N. Y. Supp. 261. And it is also true that, where two courts possess concurrent jurisdiction, the one first entertaining the action or proceeding retains authority over it. The rule is not an inflexible one in its application to Surrogate's Court, which is of limited power. Matter of Schnabel, 202 N. Y. 134, 95 N. E. 698. And if there are special circumstances calling for the intervention of a court of equity, it will assume jurisdiction, in order that its broader powers may be exercised to adjust the rights of the parties. Douglass v. Ferris et al., 138 N. Y. 192, 33 N. E. 1041, 34 Am. St. Rep. 435; Douglass v. Low, 36 Hun, 497; Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152; Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263.

In Leet v. Leet, 12 App. Div. 11, 15, 42 N. Y. Supp. 174, 176, which was in effect an action to set aside a decree of the Surrogate's Court, the rule was thus stated: ·

"Unquestionably the relief thus sought was attainable by the plaintiff in a court of equity, provided he was able to sustain his allegations by competent proof, for it is well established by abundant authority that where a judgment or decree is obtained either by imposition upon the court which grants it, or by reason of any fraud or deceit practised by the party who obtains it, the same will be declared null and void in a proper action brought for that purpose."

There was no trial in the Surrogate's Court on the judicial settlement. Of their own volition the accounting parties gave proof showing the sale to John H. Costello, and that the property was sold at its fair value, but the opinion was founded on the inventory and former decree. The trustees suppressed, or omitted to disclose, the transactions as they occurred. They practiced an imposition on the court, and may have misled or deceived the special guardian. Their good faith is impugned, and these questions are peculiarly within the province of a court of equity when the conduct of the trustees is up for review.

Again, John H. Costello is a party defendant, and the complaint seeks to set aside the sale to him. That is the gist of the action. The decree of the Surrogate's Court would be ineffective against him. It would only be operative against the trustees, as the fund had been segregated and transferred to them in pursuance of the decree of 1892, so that they held it independent of any authority which the executors originally had over it. John H. Costello never acted even as executor, and did not join in either accounting. If the decree were opened, and a trial had in the Surrogate's Court, and the trustees compelled to · account for the amount received for the stock delivered to John H., representing the trust estate, an action might still be necessary in order to adjust the rights of the parties. The trustees never had these shares of stock. Their liability, if any, is because of their fraud or mismanagement of the trust estate. John H. may have been privy to all these

transactions; but his liability, if any, is on other grounds, and a judgment against him may be essential, if plaintiff maintains his action.

I think, therefore, the plaintiff is not precluded by the decree of the Surrogate's Court, and his remedy is not confined to an application to open that decree; but the present action is well laid.

The judgment should be reversed.