(158 App. Div. 367.)

### SPALLHOLZ v. SHELDON.

(Supreme Court, Appellate Division, Third Department.   September 26, 1913.)

EXECUTORS AND ADMINISTRATORS (§ 516*) — ACCOUNTING — ILLEGAL COMMISSIONS.

    In a proceeding to charge an executor, whose account had been allowed and approved, with moneys alleged to be illegally appropriated by him as commissions, judgment for defendant *held* sustained by the evidence.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2199–2207, 2220–2232;  Dec. Dig. § 516.*]

    Kellogg and Woodward, JJ., dissenting.

Appeal from Trial Term, Washington County.

Action by Lizzie M. F. Spallholz against Mark L. Sheldon, individually and as executor of James C. Ferguson, deceased.   From a judgment for defendant, after a trial by the court without a jury, plaintiff appeals.   Affirmed.

See, also, 148 App. Div. 573, 132 N. Y. Supp. 560.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Visscher, Whalen & Austin, of Albany, for appellant.

James Gibson, Jr., of Salem (William J. Roche, of Troy, of counsel), for respondent.

HOWARD, J.   On January 31, 1891, James C. Ferguson died leaving an estate of $23,274.40.   He made some other small bequests, but left the bulk of his property to his only child, Lizzie M. Ferguson. He appointed the defendant, Mark L. Sheldon, the executor of his will.   Yearly, after assuming his duties, the executor rendered an account to the surrogate.   At each of these annual accountings certain erroneous commissions and allowances were made to the executor, the aggregate of which is $1,102.53.   When the plaintiff arrived at the age of 14 years, upon her petition, the defendant rendered his final account, February 24, 1899, and was discharged.   In March, 1909, the plaintiff discovered that the defendant had been allowed, and had taken and appropriated to his own use, these unlawful commissions and allowances.   Thereafter, and before the beginning of this action, she demanded of the defendant restitution of this money improperly and unlawfully taken out of her estate by the surrogate and awarded to the defendant.   The defendant refuses to return it.

Statutes of limitations run against actions in equity as they do against actions at law.   Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554.   This law is well settled, and therefore, unless there is some way of escape, this action is barred both by the six and the ten year statute of limitations.   If the acts of the defendant in taking these unlawful commissions, costs, and allowances do not constitute "constructive fraud," the statute of limitations has run against the claim.   The plaintiff recognizes this, and therefore her first effort is to endeavor to convince the court that the acts complained

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of do constitute "constructive fraud," and thus come within the provisions of subdivision 5, § 382, of the Code. All attempts to establish actual or positive fraud have been abandoned.

A careful examination of the best definitions of "constructive fraud" does not warrant or permit us to pronounce the acts of the executor in this case "constructive fraud."

"Legal or constructive fraud includes such contracts or acts as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead others, or to violate private or public confidence, are prohibited by law. Thus, for instance, contracts against some general public policy or fixed artificial policy of the law; cases arising from some peculiar confidential or fiduciary relation between the parties, where advantage is taken of that relation by the person in whom the trust or confidence is reposed, or by third persons." Bouvier's Law Dictionary, vol. 1, p. 843.

" 'Constructive frauds' are acts, statements, or omissions which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and yet may have been unconnected with any selfish or evil design." Anderson's Dictionary of Law, p. 475.

"Constructive fraud may be described as an act done or omitted, not with an actual design to perpetrate positive fraud or injury upon other persons, but which, nevertheless, amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence." Eaton on Equity, p. 287.

Definitions might be multiplied, but this is not necessary, for the authorities and text-books agree substantially upon this misnomer. From these definitions it will be observed that there must be some *act* or *omission* on the part of the person accused, or *breach of duty,* as other definitions say, in order that he be guilty of "constructive fraud." In this case the defendant did nothing that he ought not to have done; he omitted nothing that he should have done. There was no "breach of duty," for it was his right, if not his duty, in the absence of actual knowledge that the court was wrong, to take what the court gave him, no more and no less. He did exactly this. In fact, he obeyed absolutely and innocently the decrees of the court. He supposed he was right; he never entertained a different thought. He took no advantage of his fiduciary relations. His moral delinquency attached years after he was out of office, years after the fiduciary relations ceased. While these relations existed, he was unconscious that an unlawful profit was accruing to him. It is clear that no act and no omission of his produced this profit. The blunder of the court, not the act of the executor, produced it; and a blunder of the courts has never been held to make any litigant guilty of fraud. A search through the books will fail to disclose any instance or definition which will permit the facts existing here to be denominated "constructive fraud." Actual fraud was copiously alleged in the complaint; but there was no attempt to prove it, and we must take the record as we find it. The trial justice was right in refusing to find that there was "constructive fraud."

But, even if we extend the definition of "constructive fraud" so as to include the situation here, the question then arises: Does the word "fraud," as used in subdivision 5, § 382, of the Code, include "constructive fraud," or refer only to positive fraud? It is conceded

that the alleged cause of action is barred by the statute of limitations unless it is preserved by this subdivision. It can only be preserved under this subdivision if the word "fraud," used therein, embraces "constructive fraud," as well as actual fraud. So far as there have been any adjudications upon this question, the cases all hold that it is actual fraud against which the statute does not run until its discovery, and that the statute commences to run against "constructive fraud" as soon as the act or omission constituting it occurs. Just why the courts have pronounced this doctrine is not very well reasoned out, but that it is well recognized as the law seems to be established by the following cases: Chorrmann v. Bachmann, 119 App. Div. 146, 104 N. Y. Supp. 151; Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Price v. Mulford, 107 N. Y. 303, 14 N. E. 298; Finnegan v. McGuffog, 139 App. Div. 899, 123 N. Y. Supp. 539; Finnegan v. McGuffog, 203 N. Y. 342, 96 N. E. 1015.

We discover, therefore, first, that equity actions, like actions at law, are barred by statutes of limitations; second, that the defendant herein was not guilty of "constructive fraud"; third, that, even if his acts or omissions do amount to "constructive fraud," the statute has, nevertheless, run against the cause of action arising out of such acts or omissions—subdivision 5 of section 382 having no application.

It follows that the judgment of the trial court must be affirmed. This should be without costs.

SMITH, P. J., concurs. LYON, J., concurs in memorandum. KELLOGG, J., dissents in memorandum, in which WOODWARD, J., concurs.

LYON, J. (concurring). Unquestionably the defendant has received and retained moneys of the plaintiff, to which he was not entitled, and I concur in the affirmance of the judgment appealed from for the reason only that I think that the plaintiff's remedy is not through an action in equity in this court, but by an application to the Surrogate's Court to vacate or modify the decrees of that court settling the accounts of the defendant as such executor.

I think that a surrogate has the right to entertain such an application in case of fraud or mistake, and, upon proper proofs being made, to vacate, modify, or set aside the erroneous decrees. Code Civ. Proc. § 2481, subd. 6; Matter of Regan, 167 N. Y. 338, 343, 60 N. E. 658; Costello v. Costello, 152 App. Div. 288, 137 N. Y. Supp. 132; Matter of Malone, 150 App. Div. 31, 134 N. Y. Supp. 496; Matter of Peck, 131 App. Div. 81, 115 N. Y. Supp. 239; Matter of Flynn, 136 N. Y. 291, 32 N. E. 767; Matter of Hodgman, 82 Hun, 419, 31 N. Y. Supp. 263.

JOHN M. KELLOGG, J. (dissenting). The executor was allowed excessive commissions, but I think the decree of the surrogate is final upon that subject. It was a matter of computation, fairly within the jurisdiction of the surrogate. The executor was allowed various sums amounting to $1,065 for counsel fee, or by way of counsel fee and allowances, for caring for and managing the securities of the estate,

although he had no counsel, and although excessive commissions were allowed each year. Upon one accounting he did have counsel, and in addition the counsel was allowed $25, the propriety of which payment is not questioned. The commissions generally are a full compensation for the care and management of the securities of the estate and for transacting its business, and cover all services which the surrogate is permitted to allow to the executor as such. He may allow counsel fees, but that is to reimburse him for fees paid counsel, and in some cases not necessary to consider here certain other allowances may be made. But in a case of this kind the surrogate was absolutely without jurisdiction to grant to the executor any counsel fee or allowances of that nature. The executor and the surrogate both are presumed to know the law, and both are presumed to know that no allowances could be made the executor for these items. But they were made, and we are to assume that the surrogate had some foundation for his action.

It appears that the executor asked the allowances. The guardian ad litem consented, and they were allowed. Evidently by the request for the allowances the surrogate may have been led to believe that some services by counsel had been performed for which these allowances were to reimburse the executor. But such was not the fact. Unless the surrogate intended deliberately to violate the law, and grant the infant's money to the executor without any authority, we must assume that in some way he was overreached by the executor. When an executor obtains an allowance in his account for charges clearly unwarrantable, and which the surrogate had no jurisdiction to allow, it is, I think, a fraud within the meaning of subdivision 5 of section 382 of the Code of Civil Procedure, in which case the statute of limitations begins to run at the time of the discovery of the fraud. I do not think the infant was chargeable with knowledge of the provisions of these decrees. She had the right to assume that the executor, the surrogate, and the guardian ad litem had performed their duty, and until she had actual knowledge of the fraud the statute did not run against her.

I think the plaintiff is entitled to relief as to the allowances for costs and counsel fee, except as to the $25 paid the attorney.