ABBOTT *v.* SAGINAW ICE & COAL CO.

1. Workmen's Compensation—Filing Claim—Statute of Limitations.

Employee who delayed filing of claim for compensation for alleged accidental injury for approximately two years after first of series of accidents is alleged to have happened *held*, barred by statute of limitations where injury was apparent to plaintiff within statutory six months' period and record is not persuasive that plaintiff suffered mental incapacity from use of narcotic medicine or that fraud was practiced upon him in order to prevent him from filing claim within statutory period (2 Comp. Laws 1929, § 8431).

2. Same—Fraud—Determination of Department Final.

In suit to set aside order of department of labor and industry denying compensation based on determination that no accident had been suffered by plaintiff, under record in which no mistake is claimed, showing that both plaintiff and his counsel had full knowledge of contents of such order and award and which record is barren of fraud practiced upon either plaintiff or his counsel, decree dismissing bill was proper since an adjudication by the department of labor and industry, in the absence of fraud or mistake, must be held to be final (2 Comp. Laws 1929, § 8451).

Butzel, Potter, and McAllister, JJ., dissenting in part.

Appeal from Otsego; Bilitzke (Edward A.), J. Submitted January 12, 1938. (Docket No. 23, Calendar No. 39,761.) Decided June 6, 1938. Rehearing denied October 3, 1938.

Bill by Erwin Abbott against Saginaw Ice & Coal Company, a Michigan corporation, Central West Casualty Company, and Commissioner of Insurance

(State Accident Fund) to set aside certain releases, contracts, and awards and for a money decree for accrued compensation and other relief. Decree for plaintiff against defendants Saginaw Ice & Coal Company and Central West Casualty Company. Defendants Saginaw Ice & Coal Company and Central West Casualty Company appeal. Plaintiff cross-appeals. Affirmed in part, reversed in part.

*Walter M. Nelson,* for plaintiff.

*H. Monroe Stanton* (*Walter I. McKenzie,* of counsel), for defendants Saginaw Ice & Coal Company and Central West Casualty Company.

*Harry F. Briggs* (*Roy Andrus,* of counsel), for defendants Saginaw Ice & Coal Company and State Accident Fund.

McALLISTER, J. (*dissenting in part*). Plaintiff filed a bill alleging that while employed by defendant Saginaw Ice & Coal Company he had suffered injuries from a number of accidents arising out of and in the course of his employment; that defendant company, taking advantage of plaintiff's ignorance of his rights under the workmen's compensation act, caused him to make insufficient and erroneous claims to the department of labor and industry, and fraudulently secured from him certain waivers and releases for an inadequate consideration in violation of his rights under the law. Certain awards were made by the department of labor and industry upon plaintiff's claims, which he asks to have set aside as being based upon fraud. He also asks to have a certain contract of settlement of his claim, and releases and waivers, set aside; that all papers signed by plaintiff and delivered by him to defendant be decreed to

be periodical receipts on account of compensation; that he be decreed to be totally and permanently disabled; and that defendant be decreed to pay him all accrued compensation and to pay the same as it shall accrue.

The Central West Casualty Company and the commissioner of insurance are made defendants on the ground that they participated in bringing about the alleged fraudulent awards by the department of labor and industry.

Plaintiff, during the course of his employment with defendant company, either claimed or represented to interested parties that he had suffered from accidents which occurred at five different times, namely: January 5, 1931; January 11, 1932; December 4, 1932; December 5, 1932; and December 6, 1932.

The first claim was based upon an alleged injury suffered by plaintiff when he fell or was thrown 15 feet from the top of a coal pile to a cement floor, as a result of which his left hip and back struck a post, causing painful injuries.

Plaintiff made claim for compensation for this accident on December 15, 1932, and alleges that he was fraudulently induced by defendant company to report the accident as having occurred December 5, 1930, instead of January 5, 1931, with the result that defendant escaped liability because of the statute of limitations. In this contention, plaintiff's counsel apparently assumes that the period in which such claim must be filed, is two years; and that, therefore, when plaintiff was so induced to report the accident as having occurred on December 5, 1930, he, by such act, foreclosed himself from any recovery of compensation, because of being 10 days late in filing his claim; that if the accident had been reported as hav-

ing happened January 5, 1931, he would still have been within the time allowed by statute for the filing of such claims. In this assumption, counsel is in error. Plaintiff did not have two years in which to file his claim for compensation; but according to the statute, was limited to a period of six months from the date of the accident. (2 Comp. Laws 1929, § 8431 [Stat. Ann. § 17.165].) Plaintiff would, therefore, be precluded at the time he filed his claim on December 15, 1932, no matter which date in question was alleged as that on which the accident had occurred, for at the time of filing his claim, the statutory period had already run against him.

There is, of course, the proviso in the statute that if the actual injury, disability or incapacity does not develop or make itself apparent within six months after the happening of the accident, but does develop and make itself apparent at some date subsequent to six months after the happening of the same, claim for compensation may be made within three months after the actual injury, disability, or incapacity develops or makes itself apparent to the injured employee; but no such claim shall be valid or effectual for any purpose unless made within two years from the date the accidental personal injury was sustained. It also provides that the six-months' limitation shall not run during any time in which the injured employee shall be prevented from making his claim, because of physical or mental incapacity. In this case, the injury or disability was apparent to the employee within six months of the date of the accident. He was repeatedly treated by a physician within that period, because of the accident. There is no definite and persuasive proof that he did not discover that his injury was the result of the accident, until after the six-months' period; and there

is no proof that plaintiff's condition after the subsequent accident of December 6, 1932, revealed that he was suffering from the injury which he claims occurred on January 5, 1931, in any greater degree, than had been apparent to him from the date of the first accident; or that plaintiff's condition had become worse during that entire period of almost two years. We are not impressed with the argument that plaintiff was mentally incapacitated to file his claim, because of his use of narcotic medicine during that time. We cannot conclude from any circumstances revealed by the record that a fraud was practiced upon plaintiff in order to prevent him from filing his claim within the period provided by statute.

The chancellor properly held, therefore, that there was no showing of fraud on the part of the defendant corporation or the State Accident Fund with reference to the accident variously alleged to have occurred on December 5, 1930, and January 5, 1931.

On January 11, 1932, plaintiff claims that during the course of his employment, he slipped and fell on his back and wrenched his side. He was away from work for some time, during which time his back caused him pain, but no claim was filed by him for this accident. He mentioned its occurrence in a letter to the department some time later.

On December 4, 1932, he claims that he fell from a truck to the pavement, but did not injure himself. For this incident, he states that the defendant company reported him to its insurance company, and, as a result thereof, he received two weeks' compensation. In this testimony he is uncontradicted and this peculiar occurrence is not otherwise mentioned.

In March, 1933, plaintiff filed a claim for indemnity insurance under a policy which he had with the Continental Life Insurance Company for an acci-

dent which he reported had occurred on December 5, 1932, and in his claim it was set forth that he had been knocked down by a truck. On this claim he received a payment of $105.

These two incidents above mentioned are unexplained, except that plaintiff stated that the latter claim was concerned with an accident that happened the next day, and that the date was due to mistake.

It is this latter accident of December 6, 1932, with which this case is principally concerned; plaintiff claims that on this date he was seriously injured while assisting in pushing one of defendant's trucks out of the mud. He states that the engine was placed in reverse and he was jerked, and fell in the mud, causing his back to be strained, and that this accident increased the disability he had been suffering as a result of his injuries from the accident of January 5, 1931, to permanent and total disability.

He, therefore, filed his application for compensation with the department of labor and industry, and on August 28, 1933, appeared with his attorney for hearing. He states that there was a preliminary conference between the deputy commissioner and the attorneys in a room adjacent to that in which he was present; that he was thereafter offered a settlement of $648 in full discharge of his claim for accrued and future compensation. The contract which was prepared by the attorney for defendant Saginaw Ice & Coal Company was based upon the prospective award of the department of labor and industry and was set forth in the following terms:

"Said sum to be paid in the following manner, namely: 10 days after an award is made by the department of labor and industry denying party of the second part compensation, providing no appeal is taken within the said 10 days."

The obvious purpose was to withhold payment on this agreement until after the time had expired in which plaintiff could appeal to the department of labor and industry.

Plaintiff was, therefore, precluded by the terms of the contract and the award, both from review of the award by the full department, or by review by the department of the settlement, which is expressly required, by the mandatory terms of the statute in order to make any such settlement valid or binding.

After the expiration of the period allowed for appeal from an award, plaintiff received payment according to the terms of the invalid agreement of settlement.

Stanley R. Ostler, defense witness who had been Abbott's attorney, testified: "When Mr. Abbott came to my office and told me that they were willing to pay $648, I did not pay any attention how they arrived at the figure. I examined exhibit "8" before my client signed it. What it did was to pay this man accrued compensation and get a final release from him and a statement from him under oath that he withdrew his claim, in order to make the respondent safe legally. * * * Providing this man's condition is a result of the accident this settlement does not approximate it (his rights)."

Plaintiff testifies that at the time of the settlement the attorney for the defendant Saginaw Ice & Coal Company "wanted me to say that I did not suffer an accident on that date, and Mr. Ostler said, 'No, I would not let him commit himself. You probably remember that, you wanted me to.' "

About 10 or 11 days after the decision of the case, plaintiff received the amount provided by the contract. "I did not know why it was 10 or 11 days. I received the money about the 7th of September."

The contract was signed on the 23rd of August, award entered August 28th. The receipt and release was dated September 7th.

After plaintiff had received the money agreed upon, the general manager of defendant company discussed plaintiff's financial affairs and his debts with him and told him that he should look after his family with the money received and should "check out" of Saginaw and leave his debts there. Plaintiff, who had been living several years at Saginaw, moved away about a week after this conversation.

Plaintiff claims that because of his necessitous circumstances, he accepted the proposition and signed a contract to this effect, which had been prepared by defendant's lawyer. He further testified that when he had entered into this agreement he was told that, as a condition, he must withdraw his claim before the deputy commissioner; and upon his agreement to do so, the deputy called him in and asked if he were withdrawing his claim, to which he responded in the affirmative. The deputy commissioner thereupon entered an award, reciting, that being advised in the premises, he determined that the plaintiff "suffered no accident which arose out of and in the course of his employment," and was not entitled to compensation.

Upon this contract and award arise the chief questions in this case, as to whether they were fraudulent and whether they should be set aside in a court of equity. The chancellor found in accordance with plaintiff's contention and set aside the contract and award, as well as the releases given pursuant thereto.

Defendant company claims in its answer that the money was paid to plaintiff for the purpose of obtaining a release from any common-law liability on the part of defendant and for the purpose of obtain-

ing the plaintiff's good will. There was no common-law liability on the part of defendant. Such liability disappeared with the enactment of the workmen's compensation act, under which defendant had elected to pay compensation. There is no plausible explanation of such payment except in settlement of plaintiff's claim for injuries.

The award, that plaintiff was entitled to no compensation for the reason that he "suffered no accident," was not based upon any evidence whatever. Plaintiff withdrew his claim in consideration of the payment made by defendant, and signed an agreement with defendant to this effect. It is certain that the award would not have been entered unless this agreement was executed. And it was contrary to the statute to enter this award, based upon such agreement, for the reason that any agreement of settlement of a claim for compensation must be approved by the department of labor and industry, as required by statute. (2 Comp. Laws 1929, § 8444 [Stat. Ann. § 17.178].)

A consideration of all the facts and circumstances leaves a strong inference that the parties and their attorneys, as well as the deputy commissioner, understood that plaintiff withdrew his claim because of the settlement agreement, and not because he had suffered no accident.

In *Harrington* v. *Department of Labor and Industry,* 252 Mich. 87, this court said:

"The statute permits the parties to make an agreement in regard to compensation and when filed with, and approved by, the department it is binding. But such agreement may be approved 'only when the terms conform to the provisions of this act.' 2 Comp. Laws 1915, § 5458 (2 Comp. Laws 1929, § 8444). A mere glance at the stipulation shows

terms neither provided nor contemplated by the act. It seeks to fix by contract rather than by fact the period of disability and to fix the same finally and beyond right of further recourse to the department.

\* \* \*

"Compensation is not a private matter between employer and employee. The public is interested. The act declared a State policy that the burden of industrial accidental personal injuries shall be borne by the industries, not by the general public."

In *McDonald* v. *Ford Motor Co.*, 268 Mich. 39, this court said:

"It is largely to the benefit of the workmen that the law demands specific compliance with the terms of the act under the supervision of the department of labor and industry. Otherwise an unscrupulous employer could take advantage of the economic pressure on a disabled workman who, because of his great need, might be unable to withstand the temptation to accept an immediate offer of an inadequate amount, or a doubtful promise, in lieu of the compensation to which he would be entitled under the act."

In *Miller* v. *City Ice & Fuel Co.*, 279 Mich. 592, the court said:

"If the agreement is not warranted by the statute, the order of the department of labor and industry approving it was made without authority.

" 'Such agreements, shall be approved by said board \* only when the terms conform to the provisions of this act.' 2 Comp. Laws 1929, § 8444."

In the case before us, there was a violation of the statute in entering an award disguised as a finding

---

\* The powers and duties of the industrial accident board, here referred to, were transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 [Stat. Ann. § 17.3].—REPORTER.

that no accident had occurred, while in reality, it was based upon a settlement which had never been approved by the department of labor and industry. It is, however, contended that the violation of the statute does not enable a court of equity to set the award aside in the absence of fraud, and defendant company insists that there is no proof of deceit or fraud on its part.

The law, however, holds those acts to be fraudulent regardless of intent or evil design, which, if generally permitted, would be prejudicial to the public welfare. *Spallholz* v. *Sheldon,* 158 App. Div. 367 (143 N. Y. Supp. 417). Such acts, which by their tendency impair or injure the public interest, are termed constructive frauds. 1 Story, Equity Jurisprudence (13th Ed.), § 258. In 21 C. J. p. 114, the rule is stated as follows:

"In addition to the foregoing cases, where actual fraud either exists or is presumed from circumstances, there is a class of purely constructive frauds, where no actual imposition is shown or even inferred, but the circumstances are such that public policy demands that they should be treated in the same manner as fraudulent acts. * * * Contracts contrary to the policy of a statute are in like manner treated as if fraudulent. In the same category transactions have sometimes been placed which were not in their inception illegal and not technically fraudulent, but the effect of which if not relieved against would be similar to that of a successful fraud."

Such a contract and award, as in this case, being contrary to the intent of the workmen's compensation act and in conflict with its provision, are opposed to public policy, and disadvantageous to the rights of injured workmen, in whose behalf the law was conceived and enacted. The award in this case,

being unsupported by evidence and contrary to the provisions of the statute, was, therefore, constructively fraudulent and must be set aside in equity.

Plaintiff and cross-appellant asks this court to decree, from the evidence on the hearing before the chancellor, that plaintiff is totally and permanently disabled; that the document signed by plaintiff and delivered to defendant be decreed to be a receipt for compensation; and decree that defendant pay all accrued compensation and to pay the same as it shall accrue. The legislature has confided to the department of labor and industry the duty of passing on all questions of fact in claims for compensation under the statute, and has provided that its findings in the absence of fraud shall be conclusive. (2 Comp. Laws 1929, § 8451 [Stat. Ann. § 17.186]).

Whether plaintiff was totally and permanently disabled as the result of an accident arising out of the course of his employment with defendant company is a question of fact to be determined according to the practice and before the tribunal provided by the workmen's compensation act. It is not within the jurisdiction of this court to determine questions that have been exclusively reserved by statute to the department of labor and industry.

Defendant claims that plaintiff is barred in his present action because of laches in having delayed for approximately a year and a half in filing his bill of complaint. Lapse of time alone is not sufficient to bar equitable relief. Where such delay does not involve injury to the opposite party by reason of negligence in asserting rights within a reasonable time, it cannot be said that such delay is laches. *Wyckoff* v. *Victor Sewing Machine Co.*, 43 Mich. 309. If anyone has suffered injury in this case, it is plain-

tiff, because of the contract and award which was in violation of law and opposed to public policy. We have considered the plaintiff's necessitous circumstances, his physical condition, his futile attempts to reopen the case prior to filing his present bill, and we find no laches on his part, to preclude him from a fair and legal determination of his claim.

The contract of settlement of plaintiff's claim should be set aside; the award of August 28, 1933, should be vacated; the claim for compensation filed by plaintiff should be remanded for hearing to the department of labor and industry; and the decree of the chancellor should be affirmed. Costs of circuit court to plaintiff, as provided in the decree of the chancellor; no costs on appeal.

BUTZEL and POTTER, JJ., concurred with McALLISTER, J.

NORTH, J. Under the record in this case the decree entered in the circuit court should be reversed in so far as it was thereby adjudicated that the order of the department of labor and industry, dated August 28, 1933, was procured by fraud perpetrated upon plaintiff. I fail to find in this record any evidence of fraud in consequence of which the adjudication of the department of labor and industry was obtained. There is no claim of mistake. Under such a record the circuit court in chancery was without power to grant plaintiff any relief.

Plaintiff's application for adjustment of his claim for compensation was regularly brought on for hearing before a deputy commissioner of the department of labor and industry, on August 28, 1933. Plaintiff was present and was represented by counsel whose fidelity to his client is in no way challenged. An award was entered. Plaintiff and his counsel must

be held, both as a matter of fact and of law, to have had full knowledge at the time of the contents of the award entered. In part it reads:

"And after hearing the proofs and allegations of said plaintiff, and said defendants, said deputy commissioner being fully advised in the premises, doth find, determine and adjudge that plaintiff, Erwin Abbott, suffered no accident which arose out of and in the course of his employment with the said defendant employer in the county of Saginaw, State of Michigan, and that said plaintiff is not entitled to receive and recover compensation."

The record discloses that subsequently plaintiff received from his employer a substantial sum of money, presumably in settlement of any possible claim plaintiff might have against his employer. The receipt and release signed by plaintiff so recites. But decision herein does not turn upon the validity or invalidity of such settlement, regardless of whether it was or was not approved by the department of labor and industry. Instead decision herein turns upon the undisputed record which discloses there was a final adjudication adverse to plaintiff's claim for compensation. No appeal was taken from the award of the deputy commissioner. This record is entirely barren of any testimony tending to show that the entry of the award of the deputy was procured through any misrepresentation or deceit practiced on plaintiff or even the suppression of any fact or circumstance about which he was entitled to be informed. Neither he nor his counsel was misled, deceived or defrauded. Under such circumstances the award of the deputy commissioner is final and constitutes *res judicata* of plaintiff's claim asserted months afterwards whereby he seeks compensation for alleged injuries arising out of the identical acci-

dent. In the absence of fraud or mistake an adjudication by the department of labor and industry must be held to be final. 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186). Otherwise the whole scheme of the workmen's compensation act will be of no service to either employers or employees because of an entire absence of finality to the department's adjudications.

Since there is an entire absence of a showing of fraud, and no claim of mistake, the portion of the decree entered in the circuit court holding there was fraud must be reversed. The record contains no evidence of fraud, therefore the circuit court in chancery was without power to grant relief and plaintiff's bill of complaint must be dismissed, with costs.

WIEST, C. J., and BUSHNELL, SHARPE, and CHANDLER, JJ., concurred with NORTH, J.