MARY A. FINNEGAN, Individually and as Administratrix of the Estate of SAMUEL L. McGUFFOG, Deceased, and as Administratrix of the Estate of JOHN McGUFFOG, Deceased, et al., Appellants, v. JESSIE McGUFFOG, Respondent.

Equity — action to impress a trust — construction of voluntary trust of leasehold interest in real property for benefit of children of a deceased brother of trustee — Statute of Limitations.

Defendant's husband held a leasehold interest with right of renewal for two terms. He filed an instrument in the office of the register of the county of New York declaring a trust under which the children of his deceased brother became entitled to the transfer of his interest therein on the youngest survivor attaining the age of twenty-one years on compliance with certain conditions therein contained. Neither plaintiff, who represents the interest of such children, nor the defendant had actual notice of the existence of the paper. Defendant after the death of her husband took renewal leases of the property. *Held, first,* that in the absence of any fraudulent concealment the trust terminated and the Statute of Limitations began to run when the youngest child arrived at the age of twenty-one. *Second,* that when defendant took the lease in her own name and entered into possession of the premises she held the same in her own right and the statute began to run from that date.

*Finnegan* v. *McGuffog,* 139 App. Div. 899, affirmed.

(Submitted November 3, 1911; decided November 21, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 10, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry C. Henderson* for appellants. The defendant is estopped. (*Colden* v. *Cornell,* 3 Johns. Cas. 174; *Jackson* v. *Ireland,* 3 Wend. 99; *Jackson* v. *Thompson,* 6 Cow. 178; *St. Clair* v. *Jackson,* 8 Cow. 543; *Carves* v. *Jackson,* 4 Pet. 1; *Cranes* v. *Morris,* 6 Pet. 611; *A. D.*

*D. Co.* v. *Leavitt,* 54 N. Y. 35; *Mitchell* v. *Reed,* 61 N. Y. 123.) The defendant herein could acquire no right to the lease or to the leased premises superior to that held by James McGuffog, nor escape the obligations of the declaration of trust. (*Swinburne* v. *Swinburne,* 28 N. Y. 568; *Trustees of Union College* v. *Wheeler,* 61 N. Y. 88; *Bush* v. *Lathrop,* 22 N. Y. 535; *Central Trust Co.* v. *W. W. I. Imp. Co.,* 169 N. Y. 314; Hill on Trustees, §§ 162, 163; Story's Eq. Juris. § 1257.) The defendant herein cannot seek refuge in the claim that she is a trustee *ex maleficio,* or trustee of a constructive trust. (*Lannier* v. *Stoddard,* 103 N. Y. 672; *Thorn* v. *de Breteuil,* 86 App. Div. 405; 179 N. Y. 64; *Anderson* v. *Fry,* 116 App. Div. 740; 194 N. Y. 515; *Lightfoot* v. *Davis,* 198 N. Y. 261.)

*John M. Stoddard* and *Henry B. Hathaway* for respondent. The recitals in leases made by Hamilton Fish to the respondent create no estoppel in favor of the appellants. (*Clark* v. *Post,* 113 N. Y. 17; *C. & S. L. R. R. Co.* v. *Valentine,* 19 Barb. 484; *Reed* v. *McCourt,* 41 N. Y. 435; *Jewell* v. *Harrington,* 19 Wend. 471; *Dempsey* v. *Tylee,* 3 Duer, 73; *Pope* v. *O'Hara,* 48 N. Y. 446; *Walrath* v. *Redfield,* 18 N. Y. 457; *Bell* v. *City of New York,* 77 App. Div. 437; Herman on Estoppel, §§ 210, 213; *Torrey* v. *Bank of Orleans,* 9 Paige, 650; *Carpenter* v. *Butler,* 8 M. & W. 209; *Bank of America* v. *Banks,* 101 U. S. 240.) Even were it conceded that the respondent became a trustee of an express trust, created by the declaration of trust, the cause of action would have long since outlawed. (*Gilmore* v. *Ham,* 142 N. Y. 1; *Higgins* v. *Crouse,* 147 N. Y. 411; *Carr* v. *Thompson,* 87 N. Y. 160; *Price* v. *Mulford,* 107 N. Y. 303; *Chorrmann* v. *Bachmann,* 119 App. Div. 146; *Mills* v. *Mills,* 115 N. Y. 80; *Yeoman* v. *Townshend,* 26 N. Y. Supp. 606; *Bruce* v. *Tillson,* 25 N. Y. 194; *Lammar* v. *Stoddard,* 103 N. Y. 672; *McCotter* v. *Lawrence,* 4 Hun, 110.) At most, the respondent could have been charged as a trustee by impli-

cation. (*Lammar* v. *Stoddard*, 103 N. Y. 672; *Matter of Neilly*, 95 N. Y. 382; *Price* v. *Mulford*, 107 N. Y. 303; *Pierson* v. *McCurdy*, 33 Hun, 531; *Wood* v. *Supervisors*, 50 Hun, 1.) The ten-year Statute of Limitations applies to this case. (*Yeoman* v. *Townshend*, 26 N. Y. Supp. 606; *Lammar* v. *Stoddard*, 103 N. Y. 672; *McCotter* v. *Lawrence*, 4 Hun, 110; *Bruce* v. *Tillson*, 25 N. Y. 194; *Treadwell* v. *Clark*, 190 N. Y. 51; *Miner* v. *Beekman*, 50 N. Y. 337.)

HAIGHT, J. This action was brought by the next of kin and personal representatives of the next of kin, deceased, of John McGuffog, deceased, to impress a trust upon the lease of a parcel of land situate in the city of New York, fronting on Tenth street, two hundred and twenty feet northwesterly from Third avenue, being thirty-eight feet frontage on the avenue and from twenty to thirty feet in depth, and for an accounting of the rents, issues and profits, etc.

The facts as they appear from the findings, so far as material, are substantially as follows: On the 24th day of October, 1843, Peter Gerard Stuyvesant, being the owner of the premises above described, executed a written lease thereof to Tarrant Putnam for a period of twenty-one years, beginning November 1st, 1843, which contained a covenant to the effect that the lessee should construct a dwelling house thereon, of the size and character described in the lease, and that the landlord, upon compliance therewith by the tenant, would execute three renewal leases for a similar period, upon the terms therein specified. The tenant, having entered into possession of the premises under the lease, erected the building upon the premises, and subsequently the lease through several mesne conveyances became the property of John McGuffog and was so owned by him at the time of his death, intestate, on November 28th, 1860. He left him surviving his widow, Jeannette (since deceased), and three children, Ella, Samuel and Mary Ann, aged ten, eight and

five years, respectively, his only children, next of kin and
heirs at law.    His son Samuel died intestate, unmarried
and without issue, on January 30th, 1882, leaving his two
sisters as his only next of kin and heirs at law.    The
daughter Ella married James Jardine and died on Sep-
tember 24th, 1886, intestate, and letters of administration
were issued to her husband, who is one of the plaintiffs in
this action.    The other daughter, Mary Ann, who is the
other plaintiff in this action, married one Finnegan.

On the 9th day of September, 1862, a warrant to dis-
possess in summary proceedings was issued by Thomas
Stuart, justice of the first judicial district of the city of
New York, against those in possession of the premises
under the lease for the non-payment of rent, in which the
possession of the premises was awarded to Hamilton Fish,
the then owner of the fee of the premises in question.
Thereafter and on the 1st day of May, 1863, Hamilton
Fish leased the premises to one James McGuffog, a
brother of John McGuffog, for a term of twenty-one
years from the 1st day of November, 1863, which con-
tained provisions for two renewals of twenty-one years
each; and on the 8th day of May thereafter James
McGuffog executed the following written instrument,
which was duly recorded in the office of the register of
the county of New York on May 15th, 1863, in liber 875
of Conveyances, at page 559:

"WHEREAS, John McGuffog, late of the City of New
York, died intestate about the        day of November,
A. D. 1860, leaving him surviving Jeannette McGuffog,
his widow, and children, to wit: Ella McGuffog, aged
about 13 years, Samuel L. McGuffog, aged about 10
years, and Mary Ann McGuffog, aged about 8 years, and
no guardian having been appointed or provision made
for the support of the said children; and the said John
McGuffog having at the time of his decease the unex-
pired term of a lease for the premises No. 154 East Tenth
street, in the City of New York, with a house and shop

erected thereon, with buildings belonging to the said·
John McGuffog, which said premises are heavily encum-
bered with taxes and other charges, and a warrant to
dispossess the tenant of said premises for non-payment
of rent having been duly issued on the 9th day of Sep-
tember, 1862, whereby possession of the same was restored
to the landlord and the said lease cancelled; and the said
widow having agreed to lease her right and interest in
said premises upon the condition hereinafter named,
which agreement has been executed by her and bears
date the 23rd day of March, 1863; and

"WHEREAS, the owner of said lot of land is about to
give a lease of said premises for a term of years to run
upon payment of certain taxes, rents and expenses amount-
ing to the sum of $902.05, or thereabouts, and

"WHEREAS, certain repairs are needed on said building
which I propose to make;

"*Now, Therefore,* I, James McGuffog, of the City of
New York, do hereby declare that I take and hold said
premises for the benefit of the said children of said John
McGuffog and in part for the support and maintenance
and education of said children after I am first reimbursed
for the sums and expenses by me incurred and paid out
in payment of the said encumbrances and charges upon
said property and such taxes and other expenses or
charges as may accrue in holding the said premises and
keeping the same in repair and until the youngest sur-
vivor of said children shall attain the age of twenty-one
years, when and in that event I am to transfer and set
over all my right, title and interest in the said lease to
the said children above named or the survivor of them
after being first reimbursed as aforesaid and the allow-
ance to me of a reasonable sum for such maintenance and
education of said children.

"*In Witness Whereof,* I have hereunto set my hand
and seal May 8th, 1863.

"JAMES McGUFFOG."

Thereupon the three children of John McGuffog, deceased, were taken into the family of James McGuffog and supported and maintained by him, the son until his death, and the daughters until their marriage, each of whom, after they had arrived at sufficient age, contributed towards their respective support a portion of their earnings.

James McGuffog died intestate on the 24th day of November, 1868, leaving the defendant, Jessie, his widow, him surviving and several children. No letters of administration were ever issued upon his estate, and thereupon his widow continued to occupy the leasehold premises and to support the children of John McGuffog until their death or marriage. The youngest child of John McGuffog attained the age of twenty-one years in 1876, and thereupon, under the declaration of trust executed by James McGuffog, the children became entitled to the possession of the leasehold property upon the payment of the amounts specified in that instrument. But neither the children nor the defendant in this action had ever heard of the declaration of trust and had no knowledge of its existence prior to February, 1906. Upon the expiration of the first lease the defendant, the widow of James McGuffog, applied for a renewal, to her individually, and the same was granted by the then owner on the 28th day of October, 1884, for a further term of twenty-one years, from November 1st, 1884. Thereupon she erected upon the premises a three-story brick building in place of a one-story shop and continued to occupy the same throughout the entire period of the lease, and on October 7th, 1905, she obtained another renewal lease for twenty-one years, from the 1st day of November, 1905. This action was commenced in September, 1907, after the discovery of the existence of the declaration of trust, as before stated. The answer interposed as a bar both the ten-year and the twenty-year Statute of Limitations.

While the declaration of trust was recorded in the

office of the register of the county, and the parties interested are chargeable with constructive notice of its existence, still it satisfactorily appears from the evidence and is found as a fact by the trial court that neither the plaintiffs nor the defendant had actual notice of its existence. There is, therefore, no claim that the defendant was guilty of hiding or secreting the instrument or practicing any fraud in reference thereto, and consequently the provisions of section 382, subdivision 5, of the Code of Civil Procedure, which in substance provide that the cause of action is not deemed to have accrued until the discovery of the facts constituting the fraud, has no application to the claim made by the plaintiffs in this case. It would seem to follow that inasmuch as the defendant did not know of the existence of the trust, she never voluntarily assumed to act as trustee of an express trust. But by reason of the fact that she remained in possession of the premises under the lease to her husband after his decease, she, by construction of law, would be required to account as a trustee of a constructive trust and turn over the premises to the *cestui que trust* upon the termination of the trust estate. This, as we have seen, occurred upon the arrival of the youngest child at the age of twenty-one years, which occurred in 1876. Thereupon the trust terminated, and the children, upon complying with the conditions imposed by the declaration of trust, would become entitled to the possession of the leasehold estate, and the Statute of Limitations commenced to run from that date. There is still another theory of this case, independent of the provisions terminating the trust in 1876. After the death of her husband and the expiration of the term for which he had leased the premises, she applied to the landlord and obtained a lease in her own name, individually, and thereafter entered into the possession of the premises and held the same in her own right and not on behalf of her husband or those claiming under or through him. This we think would also set the Statute of Limitations

running.   The right of the plaintiffs to recover possession
being dependent upon the conditions embraced in the
declaration of trust which involves an accounting by a
court of equity, the ten-year Statute of Limitations applies,
and it consequently follows that the statute becomes a bar
to the prosecution of this case.   (*Lammer* v. *Stoddard,*
103 N. Y. 672.)

It is now contended that the defendant is estopped from
asserting that she is not a trustee of an express trust,
the contention being that by taking the lease in her own
name in 1884, containing the recital, "whereas, the
party hereto of the second part claims to be the lawful
owner and holder of said last mentioned lease, and that
the terms and conditions thereof have been complied with,
whereby she, the party of the second part, claims and
represents herself to be entitled to a renewal of said lease
for such further term of twenty-one years," etc., coupled
with the renewal of that lease at the expiration of its
term in 1905, which contained the recital of the granting
of the lease to the defendant in 1884, in which the defend-
ant "represented herself to be the assignee of the term
and interest therein of the said James McGuffog, and to
be entitled to a renewal of said last mentioned lease," has
placed herself in the shoes of her husband, so to speak,
and, as assignee, is bound to carry out all of his obliga-
tions as a trustee of an express trust.   In the first place,
it appearing that the defendant knew nothing of the
existence of the trust on the part of the husband, she
could not well have intended to make herself a trustee in
his place and stead.   He died intestate, leaving children
who were his next of kin and heirs at law.   The term for
which he had leased the premises had expired and the
trust had terminated eight years before.   The defendant
applied for a new lease, representing herself to be the
owner; in other words, that she had purchased the inter-
est of the children, the next of kin and heirs at law.
Under such circumstances, she takes the new lease in her

own name and right and in hostility to all outstanding claims unknown to her.    It consequently follows that the recitals mentioned do not constitute an estoppel.

In the second place, even if the recitals were sufficient to constitute an estoppel, the plaintiffs are not in a position to avail themselves of it.'    Hamilton Fish was the owner.    He executed the first lease to her.    Hamilton Fish Corporation, being the owner, executed the last lease. Hamilton Fish and Hamilton Fish Corporation, as owners and lessors, are not shown to have any relation with John McGuffog or his children, the plaintiffs in this action. The John McGuffog lease was terminated by the warrant dispossessing the tenants for the non-payment of rent, · and the premises thereafter were rented to another person, James McGuffog.    It does not appear that Hamilton Fish or Hamilton Fish Corporation ever knew or heard of the declaration of trust that was subsequently made by James McGuffog.    The plaintiffs, therefore, do not claim from, through or under Hamilton Fish or the Hamilton Fish Corporation.    Their sole claim is through the declaration of trust of James McGuffog and not through the · defendant.    It consequently follows that they, being strangers to the lessors, are not in a position to claim any benefit for estoppel by reason of recitals appearing in the lease.'    As we understand the rule, estoppel, as applied to recitals in a deed, is not for the benefit of third parties who were not bound by the recitals, nor can they invoke estoppel by reason of the recitals.    If there be an estoppel by reason of a recital it extends only to the parties to the instrument and their privies.

In *Torrey* v. *Bank of Orleans* (9 Paige Ch. 649, 659) Chancellor WALWORTH states the rule as follows: "A recital of a fact in a deed is, as against the grantee in such deed and all persons claiming under him through that deed, evidence of the fact recited therein; so as to save the necessity of further proof thereof by the grantor or those who claim under him.    The acceptance of the

deed operates as an estoppel upon the grantee and those who claim under him as against the grantor and his assigns or representatives."

In the case of *Jewell* v. *Harrington* (19 Wend. 471, 472) NELSON, Ch. J., says: "The first rule laid down by Lord Coke in respect to estoppels is, that they must be reciprocal: that is, bind both parties; and this is the reason, he observes, that regularly, a stranger shall neither take advantage of nor be bound by an estoppel."

In *Walrath* v. *Redfield* (18 N. Y. 457, 460) SELDEN, J., says: "Estoppels must be mutual; and none can avail themselves of them except parties or privies." (See, also, Herman on Estoppel, sections 210, 213, and *Pope* v. *O'Hara*, 48 N. Y. 446-454.)

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment affirmed.