LIZZIE M. F. SPALLHOLZ, Appellant, v MARK L. SHELDON, Individually and as Executor, etc., of JAMES C. FERGUSON, Deceased, Respondent.

(Supreme Court, Third Department, September 26, 1913.)

EXECUTORS AND ADMINISTRATORS—SUIT TO RECOVER EXCESSIVE COMMISSIONS OF EXECUTOR—LIMITATION OF ACTION—FRAUD—" CONSTRUCTIVE FRAUD "—CODE OF CIVIL PROCEDURE, SECTION 382, SUBDIVISION 5.

Where an executor under a will has been awarded excessive commissions and allowances on each of his annual accountings, and has rendered his final account and been discharged, he is not guilty of " constructive fraud," and a suit in equity to recover such excessive allowances, brought after ten years have elapsed, is barred by the Statute of Limitations.

In order that a person may be adjudged guilty of " constructive fraud " there must be some act or omission or breach of duty on his part.

It seems, that the word " fraud " as used in subdivision 5 of section 382 of the Code of Civil Procedure means actual and not " constructive fraud," and that the Statute of Limitations commences to run against " constructive fraud " as soon as the act or omission constituting it occurs.

KELLOGG and WOODWARD, JJ., dissented, with memorandum.

APPEAL by the plaintiff, Lizzie M. F. Spallholz, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 18th day of October, 1912, upon the decision of the court after a trial before the court without a jury at the Washington Trial Term.

Visscher, Whalen & Austin [Robert E. Whalen of counsel], for the appellant.

James Gibson, Jr. [William J. Roche of counsel], for the respondent.

HOWARD, J.—On January 31, 1891, James C. Ferguson died leaving an estate of $23,274.40. He made some other small bequests, but left the bulk of his property to his only child, Lizzie M. Ferguson. He appointed the defendant, Mark L. Sheldon, the executor of his will. Yearly, after assuming his duties, the executor rendered an account to the surrogate. At each of these annual accountings certain erroneous commissions and allowances were made to the executor, the aggregate of which is $1,102.53. When the plaintiff arrived at the age of fourteen years, upon her petition, the defendant rendered his final account, February 24, 1899, and was discharged. In March, 1909, the plaintiff discovered that the defendant had been allowed and had taken and appropriated to his own use these unlawful commissions and allowances. Thereafter and before the beginning of this action she demanded of the defendant restitution of this money improperly and unlawfully taken out of her estate by the surrogate and awarded to the defendant. The defendant refuses to return it.

Statutes of Limitations run against actions in equity as they do against actions at law. (Gilmore v. Ham, 142 N. Y. 1.) This law is well settled and, therefore, unless there is some way of escape, this action is barred both by the six and the ten years' Statute of Limitations.

If the acts of the defendant in taking these unlawful commissions, costs and allowances do not constitute " constructive fraud " the Statute of Limitations has run against the claim. The plaintiff recognizes this, and, therefore, her first effort is to endeavor to convince the court that the acts complained of do constitute " constructive fraud," and thus come within the provisions of subdivision 5 of section 382 of the Code. All attempts to establish actual or positive fraud have been aban-

doned.  A careful examination of the best definitions of " con-
structive fraud " does not warrant or permit us to pronounce
the acts of the executor in this case " constructive fraud."

" Legal or constructive fraud includes such contracts or acts
as, though not originating in any actual evil design or con-
trivance to perpetrate a fraud, yet by their tendency to deceive
or mislead others, or to violate private or public confidence,
are prohibited by law.  Thus, for instance, contracts against
some general public policy or fixed artificial policy of the
law; cases arising from some peculiar confidential or fiduciary
relation between the parties, where advantage is taken of
that relation by the person in whom the trust or confidence is
reposed, or by third persons."  (1 Bouvier's Law Dict. [Rawle's
Rev.] 843.)

" ' Constructive frauds ' are acts, statements, or omissions
which operate as virtual frauds on individuals, or which, if
generally permitted, would be prejudicial to the public wel-
fare, and yet may have been unconnected with any selfish or
evil design."  (Anderson Law Dict. 475.)

" Constructive fraud may be described as an act done or
omitted, not with an actual design to perpetrate positive fraud
or injury upon other persons, but which, nevertheless, amounts
to positive fraud, or is construed as a fraud by the court
because of its detrimental effect upon public interests and
public or private confidence."  (Eaton Equity, 287.)

Definitions might be multiplied, but this is not necessary,
for the authorities and text books agree substantially upon
this misnomer.  From these definitions it will be observed that
there must be some *act* or *omission* on the part of the person
accused, or *breach of duty* as other definitions say, in order
that he be guilty of " constructive fraud."  In this case the
defendant did nothing that he ought not to have done; he
omitted nothing that he should have done.  There was no
" breach of duty," for it was his right, if not his duty, in the

absence of actual knowledge that the court was wrong, to
take what the court gave him; no more and no less.  He did
exactly this.  In fact he obeyed absolutely and innocently the
decrees of the court.  He supposed he was right; he never
entertained a different thought.  He took no advantage of his
fiduciary relations.  His moral delinquency attached years
after he was out of office, years after the fiduciary relations
ceased.  While these relations existed he was unconscious that
an unlawful profit was accruing to him.  It is clear that no
act and no omission of his produced this profit.  The blunder
of the court, not the act of the executor, produced it; and a
blunder of the courts has never been held to make any litigant
guilty of fraud.  A search through the books will fail to dis-
close any instance or definition which will permit the facts
existing here to be denominated " constructive fraud."  Actual
fraud was copiously alleged in the complaint, but there was no
attempt to prove it, and we must take the record as we find it.
The trial justice was right in refusing to find that there was
" constructive fraud."

But even if we extend the definition of " constructive
fraud " so as to include the situation here, the question then
arises does the word " fraud " as used in subdivision 5 of section
382 of the Code include " constructive fraud " or refer only to
positive fraud?  It is conceded that the alleged cause of action
is barred by the Statute of Limitations unless it is preserved
by this subdivision.  It can only be preserved under this sub-
division if the word " fraud " used therein embraces " con-
structive fraud " as well as actual fraud.  So far as there
have been any adjudications upon this question the cases all
hold that it is actual fraud against which the statute does not
run until its discovery; and that the statute commences to run
against " constructive fraud " as soon as the act or omission
constituting it occurs.  Just why the courts have pronounced
this doctrine is not very well reasoned out, but that it is well

recognized as the law seems to be established by the following cases: Chorrmann v. Bachmann (119 App. Div. 146) ; Lammer v. Stoddard (103 N. Y. 672) ; Price v. Mulford (107 id. 303) ; Finnegan v. McGuffog (139 App. Div. 899; 203 N. Y. 342).

We discover, therefore, *first*, that equity actions like actions at law are barred by Statutes of Limitations; *second,* that the defendant herein was not guilty of " constructive fraud; " *third,* that even if his acts or omissions do amount to " constructive fraud," the statute has, nevertheless, run against the cause of action arising out of such acts or omissions—subdivision 5 of section 382 of the Code of Civil Procedure having no application. It follows that the judgment of the trial court must be affirmed. This should be without costs.

All concurred, LYON, J., concurring in memorandum, except KELLOGG, J., dissenting in memorandum, in which WOODWARD, J., concurred.

LYON, J. (concurring) :—Unquestionably the defendant has received and retained moneys of the plaintiff to which he was not entitled, and I concur in the affirmance of the judgment appealed from for the reason only that I think that the plaintiff's remedy is not through an action in equity in this court, but by an application to the Surrogate's Court to vacate or modify the decrees of that court settling the accounts of the defendant as such executor.

I think that a surrogate has the right to entertain such an application in case of fraud or mistake, and, upon proper proofs being made, to vacate, modifying or set aside the erroneous decrees. (Code Civ. Proc. § 2481, subd. 6; Matter of Regan, 167 N. Y. 338, 343; Costello v. Costello, 152 App. Div. 288; Matter of Malone, 150 id. 31; Matter of Peck, 131 id. 81; Matter of Flynn, 136 N. Y. 291; Matter of Hodgman, 82 Hun, 419.)

KELLOGG, J. (dissenting):—The executor was allowed excessive commissions, but I think the decree of the surrogate is final upon that subject. It was a matter of computation, fairly within the jurisdiction of the surrogate. The executor was allowed various sums amounting to $1,065 for counsel fee, or by way of counsel fee and allowances, for caring for and managing the securities of the estate, although he had no counsel and although excessive commissions were allowed each year. Upon one accounting he did have counsel, and in addition the counsel was allowed $25, the propriety of which payment is not questioned. The commissions generally are a full compensation for the care and management of the securities of the estate and for transacting its business, and cover all services which the surrogate is permitted to allow to the executor as such. He may allow counsel fees, but that is to reimburse him for fees paid counsel, and in some cases not necessary to consider here certain other allowances may be made. But in a case of this kind the surrogate was absolutely without jurisdiction to grant to the executor any counsel fee or allowances of that nature. The executor and the surrogate both are presumed to know the law, and both are assumed to know that no allowances could be made the executor for these items. But they were made, and we are to assume that the surrogate had some foundation for his action. It appears that the executor asked the allowances. The guardian *ad litem* consented and they were allowed. Evidently by the request for the allowances the surrogate may have been led to believe that some services by counsel had been performed for which these allowances were to reimburse the executor. But such was not the fact. Unless the surrogate intended deliberately to violate the law and grant the infant's money to the executor without any authority, we must assume that in some way he was overreached by the executor. When an executor obtains an allowance in his account for charges clearly unwarrantable, and which the surrogate had no juris-

diction to allow, it is, I think, a fraud within the meaning of subdivision 5 of section 382 of the Code of Civil Procedure, in which case the Statute of Limitations begins to run at the time of the discovery of the fraud. I do not think the infant was chargeable with knowledge of the provisions of these decrees. She had the right to asssume that the executor, the surrogate and the guardian *ad litem* had performed their duty, and until she had actual knowledge of the fraud the statute did not run against her. I think the plaintiff is entitled to relief as to the allowances for costs and counsel fee except as to the twenty-five dollars paid the attorney.

WOODWARD, J., concurred.

Judgment affirmed, without costs.