WILLIAM HENRY HARRISON, Otherwise Known as "HARRY" HARRISON, Appellant, v. HENRY SCHULTZ and Another, as Administrators, etc., of GEORGE SCHULTZ, Deceased, Respondents.

First Department, January 19, 1934.

*John L. McMaster* of counsel [*Jules J. Lubasch*, attorney], for the appellant.

*Louis Jay Brecher* of counsel [*Elsa Napolis* with him on the brief; *Freiman & Brecher*, attorneys], for the respondents.

GLENNON, J. This appeal brings up for review an order dismissing a complaint.

The court at Special Term held that " The complaint fails to state facts sufficient to constitute a cause of action. On its face it is self evident that the cause is barred by the Statute of Limitations."

In order to reach a proper conclusion in this case it is necessary to review the facts upon which plaintiff has predicated his cause of action. In doing so we wish it to be strictly understood that we are dealing solely with allegations and not proofs. We are assuming simply for the purposes of this appeal and no more that the following material facts alleged in the complaint are true.

Plaintiff is a son of Daniel D. Harrison, who died a resident of the county of New York on April 21, 1887, when plaintiff was about three years of age. Daniel D. Harrison left a last will and testament, by the terms of which he expressly bequeathed his residuary estate to his wife, Eliza M. Harrison, and to his brother, John G. Harrison, in trust as follows: " The said trustees shall invest and keep invested all of my estate, as aforesaid, in such safe security consisting either of improved real estate or good bonds secured by first mortgages on good real estate, as in their discretion shall be secure, and they shall pay the income arising from such investments

to my said beloved wife, Eliza M. Harrison, during the period of her natural life, or until her remarriage after my death. She shall use the same for the support of herself and of any of my children during the minority of the latter. In case of the remarriage of my said wife after my death, then the entire income of my said estate shall be applied and devoted to the support of my children, if any me surviving, during the period of their minority and the principal of my said estate shall be paid to my said children in equal proportions if there be more than one, or the whole thereof when they or it attain the age of twenty-one years."

The testator was survived by his widow, Eliza M. Harrison, and the plaintiff. Shortly after his death a second son was born, but lived only for a period of six weeks.

The will was admitted to probate in the Surrogate's Court, New York county, on July 1, 1887. Thereafter Eliza M. Harrison and John G. Harrison, a brother of testator, duly qualified as executors and letters testamentary were issued to them. Eliza M. Harrison, as executrix, collected the assets of the estate and proceeded with the administration thereof to the total exclusion of her coexecutor. On the 31st day of March, 1894, as executrix, she filed an accounting in which she charged herself with a cash balance in the sum of $4,979.31. The account was judicially settled and allowed and a decree was entered on October 17, 1894, which provided in part as follows: " Further ordered that she pay over to herself the balance remaining in her hands as such Trustee under the trust set forth in said Last Will and Testament and upon the compliance with provisions herein to be discharged as such Executrix."

Eliza M. Harrison married one George Schultz in June, 1894. At that time plaintiff was about ten years of age. Thereafter he resided with his stepfather and his mother until the latter's death in January, 1921. A little over four years after their marriage, to be exact on September 20, 1898, Eliza M. Schultz and George Schultz used the principal of the trust fund and the income which had accrued thereon in the purchase of a parcel of real property at No. 242 East Twenty-third street, New York city. Title to this property was taken in their joint names. The purchase price of the property was $15,200, of which $5,200 was paid in cash and the balance by a first mortgage in the sum of $10,000. At that time . George Schultz, the defendants' intestate, was fully informed as to the character of the money used in the purchase of the property and knew that it consisted of a trust fund which had been set up for the benefit of the plaintiff as the *cestui que trust* under the provisions of his father's will.

In April, 1901, George Schultz conveyed his purported interest

in the parcel of real estate to Eliza M. Schultz, not as trustee, but in her individual name. In that manner the property was carried down to the time of her death in 1921. During her lifetime both Eliza M. Schultz and George Schultz concealed from the plaintiff the fact that his money had been fraudulently invested in the purchase of the property. In fact, he never knew that his father, Daniel D. Harrison, had set up a trust fund which became his property by reason of his mother's remarriage. Eliza M. Schultz never accounted to the plaintiff for the funds which she held as trustee pursuant to the provisions of his father's will, nor did she renounce, disclaim or repudiate the existence of the trust during her lifetime.

Although Eliza M. Schultz died in January, 1921, her last will and testament was not admitted to probate until May, 1923. Under the terms of her will, she devised and bequeathed her entire estate to George Schultz, her husband. Her estate was valued at approximately $35,000 and included the real property at No. 242 East Twenty-third street. This parcel was held by George Schultz until February, 1929, when he conveyed R to the Lardur Realty Corporation, and received in payment therefor the sum of $5,000 in cash and a purchase-money mortgage in the principal sum of $20,000. At that time, or shortly before, he paid off and satisfied of record the original first mortgage in the sum of $10,000. George Schultz died intestate on October 5, 1932, a resident of the county of New York. Thereafter letters of administration were issued to the defendants in this action. At the time of his death George Schultz still retained in his possession the purchase-money mortgage in the sum of $20,000. Since the appointment and qualification of these defendants as administrators, they have assigned and transferred the purchase-money mortgage and have received therefor the sum of $15,000 in cash.

At no time after the death of Eliza M. Schultz did George Schultz ever acquaint the plaintiff with the fact that he was entitled to the trust fund which had been fraudulently used in the purchase of the property back in 1898. He first learned of the fraud practiced upon him after the death of George Schultz.

The theory upon which the administrators have been named as defendants is that the estate which they have in charge has in its possession the original trust fund which belongs to plaintiff.

The plaintiff's claim is that although the defendants had no part in the consummation of the fraudulent scheme, still the estate they are administering has profited by the fruits of the fraud.

We believe that the complaint sets forth facts sufficient to constitute a cause of action. A legal wrong is clearly established by the

facts pleaded. Where there is a wrong, there should be a remedy. It is claimed by these defendants that the remedy is barred by the Statute of Limitations. Their claim is not well founded.

Eliza M. Schultz, deceased, was concededly a trustee of an express trust. Both Eliza M. Schultz, deceased, and George Schultz, deceased, were guilty of fraudulent acts in using the principal of the trust fund for the purpose of purchasing the parcel of real estate at No. 242 East Twenty-third street in their joint names. Eliza M. Schultz, deceased, acting in concert with George Schultz, deceased, diverted the principal of the fund. At all times they concealed their wrongdoing from the plaintiff. While George Schultz, deceased, was not nominated as a trustee under the will of Daniel D. Harrison, still he knowingly assisted Eliza M. Schultz, his wife, in a fraudulent and dishonest disposition of the trust property. The trust property eventually came into his hands by virtue of the will of Eliza M. Schultz in 1923. At no time did he, to the knowledge of the plaintiff, renounce, disclaim or repudiate the trust. In *Soar* v. *Ashwell* (2 Q. B. [1893] 390, at p. 394) Lord Escher, M. R., said: " There is another recognized state of circumstances in which a person not nominated a trustee may be bound to liability as if he were a nominated trustee, namely, where he has knowingly assisted a nominated trustee in a fraudulent and dishonest disposition of the trust property. Such a person will be treated by a Court of Equity as if he were an express trustee of an express trust. The propositions thus enunciated seem to me to follow the judgments of Lord Hatherly and Giffard, L. J., in *Burdick* v. *Garrick*, Law Rep. 5 Ch. 233, and of Lord Selborne in *Barnes* v. *Addy*, Law Rep. 9 Ch. 244. * * * I am of opinion that the present case is within the description of that which is treated as and is called in equity an express trust, and that the inquiry as to the alleged breach cannot be stopped by the Statute of Limitations." This case has never been overruled in England but has been consistently followed. While we have been unable to discover a case in this State which is exactly in point, still there are expressions of opinions in some of the decided cases which indicate that our courts would have no hesitation in applying that rule in a proper case. For example, in *Finnegan* v. *McGuffog* (203 N. Y. 342, at p. 348) Judge Haight said: " There is, therefore, no claim that the defendant was guilty of hiding or secreting the instrument or practicing any fraud in reference thereto, and consequently the provisions of section 382, subdivision 5, of the Code of Civil Procedure, which in substance provide that the cause of action is not deemed to have accrued until the discovery of the facts constituting

the fraud, has no application to the claim made by the plaintiffs in this case. It would seem to follow that inasmuch as the defendant did not know of the existence of the trust, she never voluntarily assumed to act as trustee of an express trust."

Of course, we do not wish it to be understood that these defendants are precluded from setting up a defense based on the Statute of Limitations. As we stated at the outset, we are dealing simply with the facts which are set forth in the complaint. The evidence on the trial may indicate that the Statute of Limitations would be a bar to recovery.

For the reasons stated herein the order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to defendants to answer within twenty days after service of order with notice of entry, upon payment of said costs.

FINCH, P. J., MARTIN and TOWNLEY, JJ., concur; UNTERMYER, J., concurs in result.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to the defendants to answer within twenty days from service of order upon payment of said costs.